**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2754
_____

MARK J. SHOTWELL,
                                                        Appellant

v.

DELAWARE DEPARTMENT OF SAFETY AND HOMELAND SECURITY, DSHS;
ROBERT COUPE, DSHS Cabinet Secretary; LEWIS D. SCHILIRO, Former DSHS
Cabinet Secretary; DELAWARE STATE POLICE; NATHANIEL MCQUEEN, DSP
Colonel; JASON SAPP, DSP Captain; PETE SAWYER, DSP Captain; ANDREW
GATTI, DSP Detective; CHRISTOPHER MARTIN, DSP Sergeant; MATTHEW
TAYLOR, DSP Sergeant; UNIDENTIFIED OFFICERS, that participated in the arrest,
transportation, and/or search and seizure of Plaintiff's residence and/or electronics
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:18-cv-00984)
Circuit Judge: Honorable Stephanos Bibas[*]
_____

Argued on July 9, 2025

Before: KRAUSE, MATEY, and PHIPPS, *Circuit Judges*

(Filed: August 26, 2025)

Dwayne J. Bensing                    **[ARGUED]**
Jared Silberglied
American Civil Liberties Union
100 W 10th Street, Suite 706
Wilmington, DE 19801

_____

[*] The Honorable Stephanos Bibas, Circuit Judge, sitting by designation pursuant to 28
U.S.C. § 291(b).

*Counsel for Appellant*

Julia C. Mayer                  **[ARGUED]**
Office of Attorney General of Delaware
Delaware Department of Justice
820 N French Street, 6th Floor
Carvel Office Building
Wilmington, DE 19801

*Counsel for Appellees*

_____

OPINION[**]

_____

KRAUSE, *Circuit Judge*.

Appellant Mark Shotwell appeals two orders in which the District Court: (1) dismissed his Fourth Amendment general-warrant and lack-of-probable-cause claims, and (2) granted summary judgment to Appellees on his Fourth Amendment unlawful search claim. We will affirm.

## I.     BACKGROUND

In 2016, Shotwell made several social media posts suggesting he may have been in possession of firearms. At the time, he was prohibited from possessing firearms due to a court order. So Delaware State Police assigned Detective Geoffrey Biddle to investigate. Biddle phoned Shotwell to inform him of the investigation, after which Shotwell returned Biddle's call and threatened him.

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Thereafter, Appellee Sergeant Matthew Taylor applied to a magistrate for a search warrant of Shotwell's home. In his affidavit, Taylor pointed to several pieces of evidence to establish probable cause, including Shotwell's threats to Biddle and other Delaware State Police officers, his social-media posts suggestive of firearms possession, and a separate incident during which Shotwell and a companion threatened an Uber driver by telling him they had guns. The magistrate issued two warrants—the Contempt Warrant and the Documents and Devices (D&D) Warrant. The former authorized the search for, and seizure of, various weapons, including firearms. The latter authorized officers to search for and seize "[a]ny and all electronic devices" before enumerating several types of devices Shotwell might possess.[1] App. 128.

Officers executed the warrants in July 2016. They recovered no firearms but seized fourteen electronic devices. After these devices were seized, Detective Andrew Gatti extracted the data from them and made a copy of that data to be used in a later search. According to Shotwell, "nearly 10,000 files were extracted from [his] cell phones alone, including more than 7,000 files from before the investigation began, and many

---

[1] In their answering brief, Appellees ask us to take judicial notice of a third warrant that they claim authorized the search of data on any devices seized pursuant to the D&D Warrant. The existence of this purported warrant did not come to light until after Appellant filed his opening brief, and counsel for Appellees "has been unable to locate a complete copy of [it]." Answering Br. 11 n.6. Even assuming that an unauthenticated, incomplete warrant is capable of being judicially noticed, we cannot (as Appellees urge) take judicial notice of the truth of its content unless it is "generally known within the jurisdiction of the trial court, or [it is] capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Neither condition is satisfied here, so we do not consider this additional warrant, to the extent it exists.

dated even years before the events that gave rise to the investigation," including "every call, text message, photo, calendar entry, Internet search history, etc., that [he] had ever entered on these devices, and even previously deleted entries." Opening Br. 6. Unknown officers later searched this data using a list of sixteen keywords, none of which appeared in either warrant.[2]

In July 2018, Shotwell initiated this § 1983 action against Appellees. The District Court dismissed his general-warrant and lack-of-probable-cause claims at the pleading stage, and it later granted summary judgment to Appellees on Shotwell's unlawful search claim. This timely appeal followed.

## II. DISCUSSION[3]

On appeal, Shotwell advances three arguments: (1) that the Contempt and D&D Warrants are unconstitutional "general" warrants; (2) that neither was supported by probable cause; and (3) that a subsequent keyword search of the data on his seized devices was unlawful. We disagree on all fronts.

---

[2] In the underlying criminal proceeding, Shotwell pleaded *nolo contendere* to one count of Disorderly Conduct, an unclassified misdemeanor.

[3] The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1343. While Shotwell named as defendants several unidentified officers who were never formally dismissed, he represented at oral argument that he is no long pursuing those claims, making the District Court's summary judgment decision a final order. *Dzielak v. Whirlpool Corp.*, 83 F.4th 244, 259 (3d Cir. 2023) ("[A]n order resolving fewer than all claims 'may become final for the purposes of appeal where a plaintiff voluntarily and finally abandons the other claims in the litigation,' . . . [such as] when a plaintiff abandons outstanding claims through representations made on appeal . . . ." (quoting *Bethel v. McAllister Bros.*, 81 F.3d 376, 382 (3d Cir. 1996))). We therefore have jurisdiction under 28 U.S.C. § 1291 and conduct plenary review of both a dismissal for failure to state a claim and a grant of summary judgment. *Geness v. Cox*, 902 F.3d 344, 353 (3d Cir. 2018); *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020).

4

## A. The Contempt and D&D Warrants Are Not General Warrants

Shotwell first contends the warrants are general on their face because they do not sufficiently describe with particularity the items to be searched for and seized. A warrant is unconstitutionally "general" when it "authorizes 'a general exploratory rummaging in a person's belongings.'" *United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)).

While the warrants' descriptions are "certainly extensive" and authorized broad searches of Shotwell's home, they are confined to discrete items, like firearms, or definite categories of items, like electronic and media devices. *United States v. $92,422.57*, 307 F.3d 137, 149 (3d Cir. 2002). In this way, the warrants limited officers' discretion as to what items could be searched for and seized. So while the warrants "describe[d] in . . . inclusive generic terms what is to be seized," they "did not vest the executing officers with 'unbridled discretion' to search for and seize whatever they wished." *Id.* (quoting *Christine*, 687 F.2d at 753). Accordingly, they are not impermissible general warrants.

Even if the warrants are general on their face, they incorporate the accompanying affidavits, which dispel any lingering doubt about their constitutionality. We may construe a warrant in light of a supporting affidavit where it "'expressly incorporate[s] the affidavit,' and the incorporation [is] 'clear.'" *United States v. Tracey*, 597 F.3d 140, 147 (3d Cir. 2010) (quoting *Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004)). Express incorporation does not entail magic words, though, and we have "held an affidavit was incorporated where the warrant directed the police officers to search the defendant's premises for evidence which is specified in the annexed affidavit.'" *Id.* (citation

5

modified); *see also id.* at 148 ("Other Courts of Appeals have accepted phrases such as 'attached affidavit which is incorporated herein,' 'see attached affidavit,' and 'described in the affidavit,' as suitable words of incorporation.").

Both the Contempt Warrant and the D&D Warrant contain materially identical language to that which we held sufficient to incorporate an affidavit in *United States v. Johnson*. 690 F.2d 60, 64 (3d Cir. 1982). There, the warrant directed officers to search the premises "for the following evidence which is specified in the annexed affidavit," followed by several types of evidence. *Id.* The warrants here directed officers "to search . . . for the property specified in the annexed affidavit and application." App. 122, 128. That language clearly and unambiguously incorporates the affidavits submitted in support of the warrant applications. And with the warrants' respective supporting affidavits incorporated, any general-warrant argument dissipates, as the contextualization they provide makes clear that officers were authorized to search only for evidence relating to the actions described as giving rise to probable cause, and not to conduct the type of "exploratory rummaging" prohibited by the Fourth Amendment.[4] *Coolidge*, 403 U.S. at 467.

For these reasons, the District Court correctly dismissed Shotwell's general-warrant claims.

---

[4] Shotwell separately insists that the D&D Warrant is general because it gave officers "[c]*arte blanche* to search every file on fourteen different electronic and digital devices." Opening Br. 16. But the D&D Warrant only describes the "items to be searched *for* and seized"—it does not authorize the search *of* any of those devices. App. 128 (capitalization altered) (emphasis added). Thus, Shotwell cannot succeed in making a general-warrant argument premised on a search the D&D Warrant does not authorize.

6

**B.     The Warrants Were Supported by Probable Cause**

Second, Shotwell argues that the warrants were not supported by probable cause.[5]

When reviewing the probable cause determination, our duty "is 'simply to ensure that the

magistrate had a substantial basis for . . . concluding that probable cause existed.'"

*United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (quoting *Illinois v. Gates*,

462 U.S. 213, 238 (1983)).  In other words, we review only to determine whether a

substantial basis exists to conclude that "there is a fair probability that contraband or

evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.  If such

a basis exists, we "must uphold that finding even if a 'different magistrate judge might

have found the affidavit insufficient to support a warrant.'" *Miknevich*, 638 F.3d at 182

(quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)).

Here, the affidavits accompanying the warrant applications amply support the

magistrate's probable cause determinations.  Among other sworn declarations made in his

applications, Sergeant Taylor affirmed that Shotwell had threatened and harassed

members of the Delaware State Police, including by "inform[ing] them he knows where

they lived and described the vehicles owned," and posting threatening messages on his

Facebook account, and that he had "threatened [an] Uber Driver to take [him and a

companion] where they want[ed] because they ha[d] 'guns.'"  App. 125.  These

allegations provide a "substantial basis" to believe probable cause existed for each

---

[5] Appellees argue at the threshold that Shotwell is collaterally estopped from relitigating
the existence of probable cause.  But as they raise it for the first time on appeal, their
argument is forfeited, and we decline to consider it. *See In re Aquilino*, 135 F.4th 119,
130 n.7 (3d Cir. 2025).

7

category of items to be seized.  Accordingly, the District Court correctly dismissed Shotwell's lack-of-probable-cause claims.

### C.    The District Court Correctly Granted Summary Judgment to Gatti

Finally, Shotwell contends that the District Court erred by granting summary judgment to Gatti on the unlawful search claim.  We disagree.

Section 1983 plaintiffs like Shotwell "must establish the 'personal involvement' of each named defendant to survive summary judgment and take that defendant to trial." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 285 (3d Cir. 2018).  Plaintiffs bear this burden even in the "unfortunate situation" where they "are unable to identify" the individuals who "engaged in unconstitutional conduct." *Id.*

Here, a review of the record demonstrates that Shotwell cannot establish a genuine dispute of material fact concerning Gatti's involvement in the allegedly warrantless search of Shotwell's devices.  At the summary judgment hearing, Shotwell admitted that while he had "a copy of [data] extraction reports with [Gatti's] name on it," he had no evidence that Gatti did anything except extract data from his devices and that he was "not able to determine who searched what and what information."  Suppl. App. 18, 24.  On appeal, Shotwell likewise admits that "Gatti only performed data extractions, nothing more."[6]  Reply Br. 2.

---

[6] Shotwell has also waived any argument that data extraction itself is a search under the Fourth Amendment.  Reply Br. 2 ("Mr. Shotwell agrees with Defendant Gatti's assertion that mere extraction of data is not equivalent to a search of that data.").

8

Because Shotwell cannot establish a genuine dispute of material fact that any of the named officers violated the Constitution "through [their] own individual actions," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), the District Court correctly granted summary judgment to the remaining Appellees.

\*  \*  \*

For the foregoing reasons, we will affirm the District Court's judgment.